UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Roger Clausen,                                          Case No. 05-1269 (RHK/FLN)

          Plaintiff,

vs.                                                     **REPORT AND**
                                                         **RECOMMENDATION**

Jo Anne B. Barnhart,
Commissioner of
Social Security,

          Defendant.

_____

Roger Clausen, Plaintiff, *pro se*.
Lonnie F. Bryan, Esq., for the Government.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the parties' cross-motions for summary judgment [##11 and 14]. Plaintiff Roger Clausen ("Mr. Clausen" or "Plaintiff") seeks judicial review of the Commissioner of Social Security's final decision denying him Disability Insurance Benefits ("DIB"). See 42 U.S.C. §§ 416(i), 1381a, 1382c. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons which follow, the Court recommends that Plaintiff's Motion be denied and Defendant's Motion be granted.

## I.  PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits under the Social Security Act on May 14, 1997. (Tr. 73-75.) He alleged disability commencing on May 9, 1996, claiming that his "head was squashed like a grape, nose broken, nasal passages crushed, eyes, teeth, jaw damage,

1

whip lash, arms legs, hands broken and crushed" as the result of automobile accident.  (Tr. 125, 128.)  It was determined that Plaintiff met a listed impairment,[1]  and he was found to be disabled beginning May 9, 1996.  (Tr. 127.)

On  January 9, 1999, Mr. Clausen was sent a Notice of Continuing Review, which informed him that the Social Security Administration needed information about his health, ability to work and any recent medical treatment, as part of its regular ongoing review.  (Tr. 141.)  On April 11, 2000, a similar letter was mailed.  (Tr. 142.)  On August 29, 2001, the Social Security Administration sent a third letter which indicated that Mr. Clausen needed to complete the enclosed forms and return them before September 6, 2001.  (Tr. 143.)  The letter included the warning, "Important Notice: You must contact us or your Social Security benefits may stop."  (Tr. 143.)  The letter also contained the following warning:

**If We Do Not Hear From You**

We may stop your Social Security Benefits if you do not answer this letter by September 6 or contact us by this date to tell us why we have not heard from you. Before we stop your benefits, we will send you another letter to explain our decision. The letter will also explain your right to appeal the decision and how to continue getting payments during the appeal.

(Tr. 144.)

On  September 18, 2001, Plaintiff received two letters from Margaret Nelson ("Ms. Nelson"), a Disability Specialist with the state agency, one of which indicated that his eligibility for disability

---

[1]  Listing 1.11 is noted on the Disability Determination form, which is defined as: "Fracture of the femur, tibia, tarsal bone of pelvis with solid union not evident on X-ray and not clinically solid, when such determination is feasible, and return to full weight-bearing status did not occur or is not expected to occur within 12 months of onset."  20 C.F.R. Part 404, Subpt. P, App. 1, § 1.11 (1996) (now generally categorized as Listing 1.06).

was being evaluated and included an Activities of Daily Living Questionnaire. Pl.'s Aff., Exh. D3, [# 13]; (Tr. 11-12.)  The other was notification of a scheduled appointment with Dr. Steven Curtis ("Dr. Curtis") on October 12, 2001. Pl.'s Aff., Exh. D4; (Tr. 12.)  Mr. Clausen returned the completed daily activities questionnaire and the appointment form, noting that he would not be able to keep the appointment with Dr. Curtis, writing that "he will not accept the physical mental and emotional abuse given by those who are compensated for doing so the documented 20 years of it is enough." (Tr. 228.)

Mr. Clausen  received a call from Ms. Nelson on October 11, 2001, in which she indicated that she had received the daily activities questionnaire and the appointment form. (Tr. 12, 189.) Mr. Clausen claims that he subsequently received a letter from Ms. Nelson, dated October 15, 2001, informing him that he had failed to keep the scheduled appointment without notification.  (Tr. 12, 188-89.)  On October 23, 2001, Mr. Clausen sent a "letter of correction" to Ms. Nelson , in which he stated that he "has repeatedly . . . been intentionally denied proper medical diagnosis and treatment." (Tr. 188.) Mr. Clausen also wrote that "there is no question of being totally disabled." (Tr. 189.)  On October 31, 2001, the Social Security Administration mailed Mr. Clausen a Notice of Disability Cessation, terminating disability as of October 2001.  (Tr. 145.)

On November 2, 2001, Mr. Clausen completed a Request for Reconsideration of his disability cessation, writing "not able to function" and "no question of disability." (Tr. 148.)  On November 8, 2001, he sent a letter to the Social Security Administration, in which he asserted that "There is no question of total disability from the injuries received in 1996." (Tr. 206.) Mr. Clausen stated that his "disabilities are for life and place a heavy burden, on it, daily.  The claimant's condition of permanent total disability has not changed.  Especially for failure to see a doctor and

furnish them the information needed for the research purpose he was involuntarily selected for." (Tr. 207.) Mr. Clausen included a summary of his medical history, which listed medical treatment and doctors' opinions from August 1979 through March 1999. (Tr. 190-96.) Mr. Clausen also completed a Reconsideration Report for Disability Cessation, in which he stated "due to total disable [sic] condition injuries patched not repaired obvies [sic] disability for life from individual injurys [sic] then combine all." (Tr. 197.)

Elaine Applewick ("Ms. Applewick"), a Disability Specialist with the state agency, subsequently scheduled a consultative examination appointment with Dr. Steven Kirkhorn on April 29, 2002, and Linda Marshall, PhD, LP, on April 30, 2002. (Tr. 208, 227.) Mr. Clausen returned the appointment forms, indicating that he would not be able to attend the appointments and giving as a reason that he "will not accept the physical, mental and emotional abuse given by those who are compensated to do so, the documented 20 years of it is enough." (Tr. 227.) On April 25, 2002, Ms. Applewick called Mr. Clausen and noted that he refused to go to either consultative examination, stating that he would "not go to an exam where the doctor will be compensated to lie." (Tr. 231.) Ms. Applewick informed Mr. Clausen that the Social Security Administration needed current medical information to make a decision. (Tr. 231.) According the Ms. Applewick's note, Mr. Clausen responded that "he will die before he goes to see a doctor again and that we will just have to make the decision based on his medical history." (Tr. 231.)

On April 26, 2002, Mr. Clausen wrote to Ms. Appelwick, reiterating that he would not attend either scheduled appointment. (Tr. 208.) In his letter, Mr. Clausen stated that he was "in fear for his life, for those who claim to practice medicine, and will not be further victimized by those who abuse men, women, and children, and are compensated to do so." (Tr. 208.) Mr. Clausen also

wrote: "Total Disability occurred . . . yet, withe [sic] number and severity of injuries including the life threatening conditions resulting from a May 9, 1996, auto accident, his Total Disability is questioned, how ridiculous!"  (Tr. 208.)

On August 20, 2002, a hearing was held before Disability Hearing Officer Norb Hauer ("DHO"). (Tr. 217.) Mr. Clausen appeared at the hearing and testified that "he absolutely refuse[d] to attend a consultative examination set up by the Social Security Administration." (Tr. 218.) When informed that his refusal might result in cessation of benefits, Mr. Clausen continued to refuse to attend an examination and walked out of the room.  (Tr. 218.)  The DHO found that Mr. Clausen was not cooperating with the continuing disability process, noting that Mr. Clausen had "refused to attend consultative examinations that were scheduled for him and has made repeated statements both written and by testimony at the disability hearing that he refuses to see any doctor for his condition." (Tr. 218-19.)  The DHO indicated that Mr. Clausen's claim was being decided on the evidence in the file. (Tr. 219.)  The DHO concluded that there was insufficient evidence to determine the nature and severity of Mr. Clausen's impairments due to his failure to cooperate and that he no longer met the medical eligibility criteria for disability under the Social Security Act.  (Tr. 225.)

On September 9, 2003, Mr. Clausen requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 239-45.)  Mr. Clausen attached a letter in which he disagreed with the decision of the DHO, reiterating his contention that he suffers from numerous disabling impairments. (Tr. 241-45.)  A hearing was held before Administrative Law Judge William S. Herbert on May 1, 2003. (Tr. 33-72.)  As a preliminary matter, the ALJ informed Mr. Clausen that the issue was not whether he was disabled, but rather whether he was cooperating in determining whether there was continuing disability. (Tr. 37.)  The ALJ stated that under the rules,

> [A] person can be removed from benefits, simply for failing to cooperate, period. It's not hardball, it's just a necessary thing, because it's a large program that takes care of an awful lot of Americans.  And if someone is unwilling to cooperate with the program, that becomes a cutoff right there, and technically, that's the issue that I'm supposed to decide today.  It's a pretty black and white issue, because it's in there in black and white.  The purpose of what we're doing today, is to see if you - - if we can reach an agreement to have you seen by a Social Security doctor, so if you can purge this failure to cooperate.  And if we can get an examination of you, then we might get you back on the right track.

(Tr. 37.)

The ALJ observed that Mr. Clausen had initially received disability due to non-union fractures of his femurs and characterized Mr. Clausen's initial disability claim as "a slam dunk case" but noted that "those things heal[.]" (Tr. 41.)  The ALJ informed Mr. Clausen that it is normal for an individual with his impairments to come up for review to determine whether the fractures had healed properly.  (Tr. 41.)  The ALJ assured Mr. Clausen that "[t]he purpose of this examination is not to prescribe treatment . . . it's simply to examine and find out what is wrong, and give me a comprehensive report on that."  (Tr. 42.)  Mr. Clausen requested that the ALJ show him "in the rules and regulations" where it stated that he was required to be seen by a doctor.  (Tr. 50.)  The ALJ cited to 20 C.F.R. § 404.1594(e)(2).[2]  (Tr. 51.)  Mr. Clausen debated the applicability of the relevant regulation, but ultimately agreed to an orthopedic examination.  (Tr. 51-52, 61, 66.)

In June of 2003, an appointment was scheduled at the Orthopedic and Fracture Clinic pursuant to the order of the ALJ.  (Tr. 552).  On June 18, 2003, Mr. Clausen sent letters indicating that he objected to the medical evaluation.  (Tr. 552, 559.)  Mr. Clausen stated that he had agreed

---

[2]  As noted by the Commissioner, the transcript records the citation as "404.1549."  (Tr. 51.)  The Court agrees that this is most likely a typographical error, and, in any event, the ALJ accurately conveyed the substance of the relevant regulation.

to an exam only "with a medical service provider that claimant had not been victimized and/or abused in the past.  Being this medical service provider has a documented history of this, the agreement and/or contract is null and void." (Tr. 552.) Mr. Clausen also welcomed a decision based on the information in the file.  (Tr. 552-53.) Mr. Clausen asserted that "[t]he medical evidence and evidence of his activities shows claimant disabled since 1981[.]" (Tr. 553.)  Mr. Clausen also asserted that "[t]here is no question of whether claimant qualifies for benefits, yet an unsupported claim for application of a Five Step process that does not apply and is an invalidated process that is used, and misapplication results in qualified individuals not receiving benefits entitled." (Tr. 553.)

On September 26, 2003, the ALJ issued a decision unfavorable to Plaintiff on November 2, 2002.  (Tr. 31.)  The ALJ found that there was insufficient evidence to determine whether Mr. Clausen continued to be disabled due to his lower extremity fractures.  (Tr. 29.)  The ALJ noted that Mr. Clausen had agreed to participate in a consultative examination, but that he subsequently failed to show up for the appointment.  (Tr. 29.)  Pursuant to 20 C.F.R. §§ 404.911 and 404.1518,[3] the ALJ thus considered whether Mr. Clausen had good cause for failing to appear.  (Tr. 29-30.)  The ALJ found that Mr. Clausen had "not alleged he was unable to attend . . . due to illness, incorrect or untimely information or notice, a death or serious illness occurring in his immediate family, or an objection made by a treating physician.  [Mr. Clausen] has not asserted educational or linguistic limitations." (Tr. 30.)  The ALJ noted that despite Mr. Clausen's professed fear and lack of trust in medical professionals, he had sought out and received medical attention since October of 2001.  (Tr.

---

[3]  20 C.F.R. § 404.911 sets forth the factors to be considered in determining whether an individual had good cause.  20 C.F.R. § 404.1518 provides that an individual who fails to take part in a consultative examination without good cause may be found not disabled.  Section 404.1518 also provides examples of good reasons for failure to appear.

30, 527-48.)

The ALJ acknowledged that Mr. Clausen asserted that he is subject to an impairment in mental functioning, and that the evidence showed that he was subject to a pain disorder associated with psychological factors and a general medical condition, an acute stress disorder, and a cognitive disorder not otherwise specified.  (Tr. 30.)  The ALJ noted, however, that at the time Mr. Clausen was assessed with a Global Assessment of Functioning score of 60.[4]  (Tr. 30, 501.)  The ALJ also noted that Mr. Clausen reported that he retained the ability to shop, attend church on an occasional basis, and participate in occasional recreational and social activities.  (Tr. 30.)  The ALJ concluded that Mr. Clausen was not subject to any mental limitation that would hinder his ability to attend the consultative examinations.  (Tr. 30.)  Accordingly, the ALJ found that Mr. Clausen did not have good cause for his failure to appear at the consultative examinations.  (Tr. 30.)  The ALJ thus proceeded to decide the matter on the information in the file, concluding that it contained insufficient evidence to evaluate whether medical improvement had occurred. (Tr. 30-31.) The ALJ ultimately concluded that Mr. Clausen's disability ended in October 2001.  (Tr. 31.)

Plaintiff appealed the decision to the Appeals Council.  (Tr. 9-20.)  The Appeals Council declined to review the ALJ's decision on April 29, 2005. (Tr. 6-8.)  The denial of review made the ALJ's findings the final decision of the defendant.  42 U.S.C. §405(g); Browning v. Sullivan, 958

---

[4]  The Global Assessment of Functioning scale is used to assess an individual's overall level of functioning.  Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (citing the Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000 Revision)).  The lower the score, the more serious the individual's symptoms.  See id.  A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV 32.

F.2d 817, 822 (8th Cir. 1992); 20 C.F.R. § 404.981.

## II.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the Secretary's findings are supported by substantial evidence.  See Gavin v. Heckler, 811 F.2d 1195, 1197-99 (8th Cir. 1987); Taylor v. Bowen, 805 F.2d 329, 331 (8th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See Richardson v. Perales, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g). The Eighth Circuit has expanded upon this substantial evidence standard, holding that the Commissioner's decision must be based upon substantial evidence on the record as a whole.  See Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989).  This expanded standard requires the court to do more than search for the existence of substantial evidence which supports the Commissioner's findings.  Id. at 175.  The substantiality of the evidence must take into account whatever is in the record that fairly detracts from its weight.  See Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).

## III.  ISSUE ON APPEAL

Did the ALJ properly determine that Mr. Clausen failed, without good cause, to cooperate with the ongoing disability review process?

## IV.  CONCLUSIONS OF LAW

The continuing disability review process is governed by a sequential analysis set forth in 20 C.F.R. § 404.1594(f).  See Dixon v. Barnhart, 324 F.3d 997, 1000 (8th Cir. 2003).  The analysis

> may involve up to eight steps in which the Commissioner must determine (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical

improvement, (4) if there has been medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is sever, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

Id., at 1000-1001 (citing 20 C.F.R. § 404.1594(f). The regulation specifically provides that "review may cease and benefits may be *continued* at any point if we determine there is sufficient evidence to find that you are still unable to engage in substantial gainful activity." 20 C.F.R. § 404.1594(f) (italics in original).

20 C.F.R. § 404.1594(e) sets forth certain exceptions which may result in a finding that an individual is no longer disabled. Among the listed exceptions, the regulation provides:

If there is a question about whether you continue to be disabled and we ask you to give us medical or other evidence or to go for a physical or mental examination by a certain date, we will find that your disability has ended if you fail, without good cause, to do what we ask. Section 404.911 explains the factors we consider and how we will determine generally whether you have good cause for failure to cooperate. In addition, §404.1518 discusses how we determine whether you have good cause for failing to attend a consultative examination.

20 C.F.R. § 404.1594(e)(2). In making "any determination relating to . . . failure by any individual without good cause to cooperate . . . , the Commissioner . . . shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have . . . ." 42 U.S.C. § 423(f).

The issue in this matter involves step three of the sequential analysis set forth in Section 404.1594(f), *i.e.*, whether Mr. Clausen has experienced medical improvement. It is undisputed that Mr. Clausen has repeatedly refused the requests of the Social Security Administration to attend

consultative examinations in order to provide a factual basis by which step three could be answered. Thus, the narrow issue presented is whether substantial evidence supports the ALJ's determination that Mr. Clausen did not have good cause for failing to attend the consultative examination.

In moving for summary judgment, Plaintiff maintains the position that he is disabled. In support of his argument, he recites his medical history through 1999 and directs the Court to a finding of total permanent disability dating to November of 1997 in the context of a state worker's compensation proceeding.[5]   See Pl.'s Mem. in Support, p. 7, [#12].  In response, the Commissioner contends that Plaintiff has failed to provide any explanation for his failure to attend the scheduled consultative examinations, and therefore the Court should affirm the ALJ's decision.  See Def.'s Mem. in Support, p. 14, [#15].

The facts in this matter compel agreement with the Commissioner's position.  At each step of the continuing review process, employees and officials of the Social Security Administration have attempted to work with and convince Plaintiff to attend consultative examinations in order to enable an informed decision in his case as whether he has made any medical improvement or not.  Plaintiff has repeatedly failed to attend the scheduled examination, and has made no showing that such failures were due to "good cause."  See 20 C.F.R. § 404.1518(b) (examples of good cause for failure to appear include: illness on the date of the scheduled examination or test; not receiving timely notice of the scheduled examination or tet, or receiving no notice at all; being furnished incorrect or incomplete information about the physician involved or the time or place of the examination or test; or having had a death or serious illness occur in your immediate family).  Indeed, Plaintiff's

---

[5] See Clausen v. Dotson, 61 W.C.D. 82, 85-87 (Minn. Work. Comp. Ct. App. 2000), aff'd 621 N.W.2d 459 (Minn. 2001) (en banc).

proffered reason for not attending the consultative examinations, *i.e.*, fear for his well-being, is belied by the fact that the record shows he sought out and received medical treatment subsequent to October of 2001.  (Tr. 535, 537-47.)

A relatively recent decision issued in Kreidler v. Barnhart, 385 F.Supp.2d 1034 (C.D. Cal. 2005) dealt with facts nearly on all fours with those presented here.  In Kreidler, the plaintiff missed multiple consultative examinations and failed to provide the Social Security Administration with medical records necessary to establish current disability.  See 38 F.Supp.2d at 1035.  The Kreidler Court held that the plaintiff's repeated failures to attend the scheduled consultative examinations coupled with her failure to "even attempt[] to argue[] she had 'good cause'" warranted termination of her benefits.  Id., at 1037; compare Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (finding that plaintiff's failure to cooperate appeared to be due to the very factor that rendered him eligible for disability in the first place).  As in Kreidler, the evidence of record in this matter amply supports the ALJ's determination that Plaintiff repeatedly failed to attend the consultative examinations without good cause and concomitantly the ALJ's conclusion that the evidence was insufficient to evaluate whether medical improvement had occurred.  Cf. Pearce v. Sullivan, 871 F.2d 61, 62, 64 (7th Cir. 1989) (refusal to cooperate in consultative examination resulted in failure to obtain the test results necessary to establish disability).  Accordingly, the Court recommends that Plaintiff's motion for summary judgment be denied and the Defendant's motion for summary judgment be granted.

## V.  RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.       Plaintiff's Motion for Summary Judgment [#11] be **DENIED**;

    2.        Defendant's Motion for Summary Judgment [#14] be **GRANTED.**


DATED: June 27, 2006               *s/ Franklin L. Noel*
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge


       Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 17, 2006,** written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

       This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.